UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                          **Hon. Hugh B. Scott**

                                          07CR265A

                v.

                                          **Report**
                                             **&**
                                        **Recommendation**

Robert Hunter,

                        Defendant.
_____

      Before the Court is the defendant's motion seeking suppression of evidence.  (Docket No. 11).

**Background**

      On November 6, 2007, a Grand Jury indicted defendant Robert Hunter ("Hunter") with one count of illegal possession with intent to distribute a cocaine base controlled substance in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C).

      A hearing on the suppression motion was held on February 19, 2008.  On October 1, 2007, Buffalo City Court Jeanette Ogden issued a search warrant for the lower apartment at 115 Kosciuszko Street.  Detective Philip Tisdale of the Buffalo Police Department testified that a few

days prior to that date, he had received a tip that crack cocaine was being sold out of the apartment. (Docket No. 17 at 9). He conducted surveillance of the house and observed several people that he was familiar with in the "drug-related community" enter the house and come right out. According to Tisdale, that type of short term traffic is indicative of drug activity. (Docket No. 17 at 10-11). Tisdale then arranged for a confidential informant ("CI") to make a controlled buy of crack cocaine at 115 Kosciuszko Street. On September 31, 2007, the CI purchased drugs at that location which field tested positive for cocaine. (Docket No. 17 at 11-12). On October 1, 2007, Tisdale sought a search warrant for the lower apartment at 115 Kosciuszko Street. Both Tisdale and the CI testified before Judge Ogden in support of the warrant. (Docket No. 17 at 12). At the suppression hearing, Tisdale testified that he had known the CI for 25 years and had used this CI to make controlled purchases on more than 200 occasions. (Docket No. 17 at 24- 27). Tisdale presented Judge Ogden with an affidavit attesting to his observance of the control purchase; describing the premises and identifying the apartment to be occupied by a "black male 5'8" 180 lbs, light skin, 27 [years of age]". (Government Exhibit 1). Judge Ogden then interviewed the CI. subsequently, Judge Ogden issued the search warrant providing for the search of the front lower apartment at 115 Kosciuszko Street. The search warrant did not provide for the search of any persons located therein. In fact, the language providing for the search of "any person thereat or therein" was stricken on the search warrant form issued by Judge Ogden. (Government Exhibit 16).

Tisdale then met with several other officers to discuss the execution of the search warrant. Upon arrival at 115 Kosciuszko, the officers observed Hunter, and another individual, Charles

Cunningham, sitting on the porch of the house.  The officers approached the apartment with their weapons drawn.  The entry team directed that Cunningham and Hunter get down on the ground.  The men complied. (Docket No. 17 at 13-18).  Several of the officers entered the apartment, leaving Tisdale and Lieutenant John C. Eberhart outside with Cunningham and Hunter.   Tisdale stated  that he and Eberhart then holstered their weapons.  Tisdale testified that he knew Cunningham and had seen Hunter "on different occasions."   (Docket No. 17 at 20-21).   Eberhart testified that he also knows Cunningham and that he went to grade school with him. (Docket No. 17 at 57).   Eberhart testified that he performed the pat down on Hunter and then went over to talk with Cunningham. (Docket No. 17 at 58-59) .  According to Tisdale, he asked Hunter to stand up and patted him down to check for weapons.  Neither Hunter nor Cunningham were handcuffed at that time.  After patting down Hunter, Tisdale asked Hunter if he had "anything on him." (Docket No. 17 at 20).  In response, Hunter reached into his pocket and pulled out what Tisdale suspected was crack cocaine and gave it to Eberhart. (Docket No. 17 at 21).  At that point, Hunter was placed under arrest and brought into the apartment,. (Docket No. 17 at 22).  On cross-examination, Tisdale stated that it was after he had performed a pat down on Hunter and were satisfied that there was no safety issue that he asked Hunter if he had anything on him. (Docket No. 17 at 48).  Both Tisdale and Eberhart acknowledged that Hunter was never allowed to leave under his own free will. (Docket No. 17 at 49; 71).

The officers inside the apartment had discovered a bag of marijuana (Docket No. 17 at 24).  The government does not contend that Hunter was the individual who had sold crack cocaine to the CI in the controlled buy, but that another individual, Mark Hodges, (who was

arrested inside the apartment) fit the description provided by the CI. (Docket No. 17 at 44-45).

**Discussion**

The defendant extends two Fourth Amendment arguments[1] in support of the motion to suppress: that the seizure from him exceeded the scope of the search warrant and that the police lacked probable cause to search him. (Docket No. 11 at pages 6-9). These arguments fail. The officers' detention of Hunter during the search, the pat down for weapons, as well as asking him if he "had anything on him," constituted neither a search outside of the scope of the warrant, nor a violation of Hunter's Fourth Amendment rights. It is well settled that during the execution of a search warrant, the police may detain those present at the premises being searched. Michigan v. Summers, 452 U.S. 692 (1981). Such detention does not rise to the level of an arrest. United States v. Morales, 611 F.Supp. 242, 245 (2d. Cir. 1985). The Supreme Court has held that "[a]n officer's authority to detain incident to a search is *categorical*; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.' " Muehler v. Mena, 544 U.S. 93, 98 (2005)(emphasis in original) quoting Summers, 452 U.S. at 705, n.19. This applies to all those present at the time of the search, not just "owners" or "tenants." Morales, 611 F.Supp. at 245; United States v. Taylor, 716 F.2d. 701, 707 (4th Cir. 1983). Inherent in Summers' authorization to detain an occupant of the place to be searched is the

---

[1] Neither the defendant, nor the government, raise or discuss any Fifth Amendment implications arising from the underlying factual circumstances presented in this case. Thus, the instant Report & Recommendation does not include discussion of any Fifth Amendment analysis.

authority to use reasonable force to effectuate the detention. <u>Muehler</u>, 544 U.S. at 98; also citing <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). Indeed, <u>Summers</u> stressed that the risk of harm to officers and occupants is minimized "if the officers routinely exercise unquestioned command of the situation." <u>Summers</u>, 452 U.S., at 703.  The fact that the officers may have displayed or drawn their guns (<u>Morales</u>, 611 F.Supp. at 245), or handcuffed those present during the search (<u>Muehler</u>, 544 U.S. at 100) is not, without more, unreasonable. Finally, the Supreme Court made clear in <u>Muehler</u> that questioning a person whom the police detain incident to a building search does not require independent probable cause because "mere police questioning does not constitute a seizure."  <u>Muehler</u>, 544 U.S. at 101 (quoting <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991)). The Supreme Court rejected the notion that questioning a detainee "constitute[s] a discrete Fourth Amendment event," unless the questioning prolongs the detention. <u>Id</u>.  See also <u>United States v. Turvin</u>, 17 F.3d 1097 (9th Cir. 2008); <u>United States v. Torres-Monje</u>, 433 F.Supp.2d. 1028 (D.N.D.  2006) .

In <u>Muehler</u>, the officers detained Iris Mena (along with several others), in handcuffs, for a period of 2 to 3 hours in a converted garage, during the execution of a search warrant seeking weapons at a connected  "gang house."  There is no indication that <u>Miranda</u> warnings had been provided to the detained individuals.  In reversing the lower court's finding that the questioning of that individual was impermissible, the Supreme Court reasoned:

> This holding, it appears, was premised on the assumption that the officers were required to have independent reasonable suspicion in order to question Mena concerning her immigration status because the questioning constituted a discrete Fourth Amendment event. But the premise is faulty. We have "held repeatedly that mere police questioning does not constitute a seizure." ... "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." Bostick, 501 U.S. at 434-435 (citations omitted). As the Court of Appeals did not hold that the detention was prolonged by the questioning, there was no additional seizure within the meaning of the Fourth Amendment. Hence, the officers did not need reasonable suspicion to ask Mena for her name, date and place of birth, or immigration status.

Muehler, 544 U.S. at 101.

In the instant case, it appears undisputed that after completing a "light pat down", Tisdale asked Hunter if he "had anything on him." (Docket No. 17 at 20). The defendant's argument that this conduct constituted a "search" must fail, as the Supreme Court made clear in Muehler, the asking of a question does not constitute a search. Although he was not free to go at that time, Hunter was not cuffed, and was standing just outside of the apartment with Cunningham and the two officers (Tisdale and Eberhart). He was not under arrest, and he was not the target of the search warrant. No more than five minutes had elapsed from the time the officers arrived at the scene. (Docket No. 17 at 22). There is no basis to conclude that this questioning prolonged the detention

The linchpin of any Fourth Amendment analysis is reasonableness. As recognized in Summers, police officers executing a search warrant have a legitimate need to maintain control of

the situation.  Upon completing a light pat down of Hunter, it was not unreasonable for Tisdale to ask him if he had "anything on him;" a question that would encompass weapons as well as contraband.  In any event, pursuant to the Supreme Court's ruling in Muehler, the asking of such a question under such circumstances, without more, does not constitute a Fourth Amendment event.

During oral argument, the defendant made an oral request the that the Court review the materials submitted in support of the search warrant, including the testimony provided to Judge Ogden.  The Court has reviewed Tisdale's affidavit, as well as the testimony presented to Judge Odgen and finds that probable cause existed for the issuance of the search warrant.  During the colloquy, the CI identified himself to Judge Ogden; stated that he was a paid informant; described the payment he received for making controlled purchases; described the property located at 115 Kosciuszko Street; described the date, time and place he made the purchase;  described the person he made the purchase from; and informed the Judge as to whether others were present at the time of the purchase.  In response to questioning by Judge Ogden, the CI stated that he knew the substance he purchased was crack cocaine because he was a user; and advised the Court he was not under any influence at the time of the colloquy.  The CI described how the purchase took place, his location on the premises.  Tisdale also testified before Judge Ogden.  He stated that he observed the CI going to the house and coming back from making the controlled purchase; that he had used this CI on a number of controlled purchases; that he has submitted drugs purchased by the CI for laboratory testing; that laboratory results have come back positive for controlled substances; that prior arrests and convictions have resulted based upon the information provided

by this CI.  This record establishes the reliability of the CI and that probable cause existed for the issuance of the search warrant of 115 Kosciuszko Street.

### Conclusion

Based on the above, it is recommended that the motion to suppress the evidence obtained from the defendant be denied.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **<u>Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.</u>**

So Ordered.

                                                                */s/ Hugh B. Scott*
                                          United States Magistrate Judge
                                          Western District of New York

Buffalo, New York
April 18, 2008